IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>IMPAC MORTGAGE HOLDINGS, INC., et al.,<br>Reorganized Debtors. | ) | Chapter 11<br>Case No. 26-10593 (CTG)<br>(Jointly Administered) |
| WASEEM NAIK,<br>Appellant,<br>v.<br>IMPAC MORTGAGE HOLDINGS, INC., et al.,<br>Appellees. | ) | C.A. No. 26-844 (MN) |

**MEMORANDUM OPINION**

Waseem Naik, Pro Se Appellant

Curtis S. Miller, Alexis L. Sullivan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Daniel B. Besikof, Lindsay Sklar, Emma Cervantes, LOWENSTEIN SANDLER LLP, New York, NY – Attorneys for Appellees

September 8, 2026
Wilmington, Delaware

Maryellen Noreika
**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arises in the chapter 11 cases of debtor Impac Mortgage Holdings, Inc. and certain affiliates (together, "the Appellees" or "the Reorganized Debtors"). On May 29, 2026, the Bankruptcy Court entered an Order (Bankr. D.I. 165)[1] ("the Confirmation Order") which, *inter alia*, confirmed the Debtors' plan of reorganization (Bankr. D.I. 13) (together with all exhibits, and as amended, modified, or supplemented, "the Plan"). On June 12, 2026, pro se appellant Waseem Naik ("Appellant"), who has filed two proofs of claim in the chapter 11 cases,[2] filed a timely notice of appeal with respect to the Confirmation Order, initiating a separate appeal which is currently pending. *See Wassem Naik v. Impac Mortgage Holdings, Inc.*, C.A. No. 26-692 (MN) ("the Confirmation Order Appeal").[3]

In connection with the Confirmation Order Appeal, Appellant filed in the Bankruptcy Court a motion for stay pending appeal, which was subsequently denied (Bankr. D.I. 182) ("the Stay Denial Order"). Pending before the Court is Appellant's appeal of the Stay Denial Order ("the Stay

---

1 The docket of the chapter 11 case, captioned *In re Impac Mortgage Holdings, Inc.*, No. 26-10593 (CTG) (Bankr. D. Del.), is cited herein as "Bankr. D.I. ___."

2 Appellant has filed two proofs of claim, assigned Claim Nos. 12 and 64 (together, "the Claims"), each seeking allowance of general unsecured claims in the amount of $665,772.77 against different Debtor entities.

3 Appellant contends that he did not receive notice of the plan confirmation hearing until after the Confirmation Order had been entered and his Confirmation Order Appeal seeks to vindicate his due process rights. Appellant's many submissions to date identify no confirmation objection that he would have raised, no provision of the Plan that is problematic or affects Appellant's rights in any objectionable way, or any error with respect to the Plan or the Confirmation Order that should be remedied. Appellant further asserts that he does not seek to unwind the Plan. The Reorganized Debtors, as appellees, have moved to dismiss the Confirmation Order Appeal (*id.*, D.I. 10) ("the Motion to Dismiss") on the bases that (1) Appellant received adequate notice which satisfied his due process rights thus his unspecified objection to the plan has been waived or forfeited, (2) no meaningful relief has been identified or could be granted in connection with the appeal, and (3) the appeal is equitably moot. The Motion to Dismiss is fully briefed. (*Id.,* D.I. 10, 13, 14, 16).

Denial Appeal"). Attached to Appellant's notice of appeal of the Stay Denial Order was a motion for leave to appeal (*id*., D.I. 1 at pp. 3-9 of 75) ("the Motion for Leave to Appeal"). The Motion for Leave to Appeal is fully briefed. (*Id.*, D.I. 6, 10). Appellant has also filed a renewed motion for stay pending appeal (*id*., D.I. 3) ("the Renewed Stay Motion"). The Renewed Stay Motion is fully briefed (*id.,* D.I. 3, 5, 7), including various declarations filed by Appellant (*id*., D.I. 4, 8).

For the reasons set forth herein, the Court will deny the Motion for Leave to appeal the Stay Denial Order and dismiss this proceeding. The Court will also deny the Renewed Stay Motion.[4]

## I. BACKGROUND

### A. The Foreclosure Action and Related Litigation

On June 18, 2024, the predecessor to Nationstar Mortgage LLC ("Plaintiff") commenced a residential mortgage foreclosure action against Appellant captioned *Impac CMB Trust Series 2003-9 v. Naik*, No. SWC-F-6108-24 (N.J. Super. Ct. Ch. Div. 2024) ("the Foreclosure Action"), pending in the Superior Court of New Jersey, Chancery Division, Mercer County ("the Superior Court"). In the Foreclosure Action, Plaintiff seeks to foreclose upon Appellant's residence, where Appellant's underlying mortgage obligation dates to 1997. Appellant has a lengthy, 19-year history of foreclosure-related litigation. On April 10, 2026, IMPAC CMB TRUST SERIES 2003-9F was substituted for Nationstar Mortgage LLC as Plaintiff. Despite having the word "Impac" in its name, the substitute Plaintiff did not file for bankruptcy and is not one of Appellees—a fact that appears

[4] It appears that the Renewed Stay Motion was erroneously docketed in the Stay Denial Appeal. The Renewed Stay Motion seeks a stay of the Confirmation Order pending Appellant's appeal and should have been docketed in the Confirmation Order Appeal. The Renewed Stay Motion indicates, however, that "emergency relief [is] requested." To avoid any unnecessary confusion, address the Renewed Stay Motion on an expedited basis, and meet the Court's obligation to "construe [Appellant's] pleadings liberally," the Court opts to treat the Renewed Stay Motion as if it had been docketed in the correct appeal and render its decision without additional delay. *Laughlin v. Peck,* 552 F. App'x 188, 190 (3d Cir. 2014) ("[Appellant] proceeds *pro se*, and accordingly, we construe his pleadings liberally") (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).

to be a source of confusion for Appellant. None of the Appellees is party to the Foreclosure Action, nor does any Appellee have any interest in Appellant's mortgage.[5]

Appellant represents himself in the Foreclosure Action pro se. The docket contains 238 filings over roughly two years, characterized by opposing counsel as "an avalanche of communication and filings." *See* Foreclosure Action, Transaction No. CHC2025308429. Accordingly, the Superior Court entered a gatekeeping order restricting his filings absent Court permission and has denied virtually every substantive motion he has brought, including his motions to dismiss, vacate, reconsider, and stay. *See* Foreclosure Action, Transaction Nos. CHC202670023, CHC202697126, CHC2024332915, CHC202635957, CHC2026119503, and CHC2026168349. Appellant has been litigating his foreclosure for about 19 years, having represented himself in two prior foreclosure proceedings in 2007 (Docket No. F-23693-07) and 2015 (Docket No. F-28748-15), both of which related to the same residence and, upon information and belief, the same mortgage. *See Foreclosure Action*, Transaction No. CHC202616834. As part of this years-long process, Appellant's wife has also filed at least two Chapter 13 bankruptcy petitions in the Bankruptcy Court for the District of New Jersey (Case Nos. 18-15460-CMG and 21-18795-CMG).

---

5 Appellees further assert as follows:

> [I]t appears that Impac Mortgage Corp, one of Appellees, was a party to the second prior foreclosure action in 2015. That action was placed on hold after Appellant's wife filed for bankruptcy in 2021, though the case was not closed due to apparent clerical error. The foreclosure judgment in that action was vacated in May 2026 at the request of a successor servicer on the loan, after years of inactivity, but Appellant is appealing that vacatur. In any event, Impac Mortgage Corp. has no interest in Appellant's mortgage. It is neither the owner nor the servicer of the mortgage, and it is not seeking to foreclose on that mortgage. The claims asserted against Appellant in the current Foreclosure Action, which is actively being litigated, were brought by a non-debtor.

(D.I. 6 at 4 n.3).

**B. <u>The Debtors' Chapter 11 Cases</u>**

On April 26, 2026 ("the Petition Date"), the Debtors filed voluntary petitions under chapter 11. Also on the Petition Date, the Debtors filed a plan of reorganization (Bankr. D.I. 13) ("the Plan") and disclosure statement (Bankr. D.I. 9) ("the Disclosure Statement"). Also on the Petition Date, the Debtors moved for approval of Plan solicitation and scheduling procedures (Bankr. D.I. 15), which the Bankruptcy Court granted by order entered April 29, 2026 (Bankr. D.I. 73) ("the "Procedures Order"), and which also scheduled a combined hearing on approval of the Disclosure Statement and Plan confirmation for May 28, 2026 ("the Combined Hearing"). That same day, the Debtors served Appellant with the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Chapter 11 Plan, and Related Matters, and (III) Objection Deadline* ("the Hearing Notice"), identifying May 21, 2026 as the objection deadline. The Debtors served both Appellant and his spouse with the Hearing Notice by first-class mail at their address of record. (*See* Bankr. D.I. 101 (Certificate of Service listing "Waseem Naik" and "Asma W. Naik" as served by first-class mail)). Appellant concedes that he received service of the Combined Hearing Notice, among other pleadings filed in the Chapter 11 Cases, but contends he did not receive the Hearing Notice until June 3, 2026. (*See* D.I. 4 ¶¶ 6-7).

**C. <u>Confirmation of the Plan and Effective Date</u>**

On May 28, 2026, the Bankruptcy Court held the Combined Hearing, which was uncontested. Appellant did not appear at the Combined Hearing and did not file an objection to confirmation of the Plan. On May 29, 2026, the Bankruptcy Court entered the Confirmation Order. On June 10, 2026 ("the Effective Date"), the Plan became effective. Since the Effective Date, the Reorganized Debtors have substantially consummated the Plan, including satisfying and refinancing the DIP Facility through funding of the Exit Facility, revesting estate assets free and clear of liens,

canceling existing equity interests and issuing new equity to the Plan Sponsor, adopting amended governance documents, assuming and rejecting contracts, funding reserves, and making distributions required under the Plan. (*See* D.I. 5 at 6-7).

**D. The Confirmation Order Appeal and Motion for Stay Pending Appeal**

On June 12, 2026, two days after the Plan's Effective Date, Appellant filed his notice of appeal with respect to the Confirmation Order. (C.A. No. 26-692, D.I. 1). In connection with his appeal of the Confirmation Order, Appellant filed a motion for stay of the Confirmation Order pending appeal in the Bankruptcy Court (Bankr. D.I. 171) ("the Stay Motion"). On June 26, 2026, the Bankruptcy Court entered the Stay Denial Order. The Stay Denial Order found, among other things, that Appellant had "forfeited his right to appeal by failing to object to confirmation" and that Appellant "failed to demonstrate irreparable injury" because any harm was "self-inflicted." (Stay Denial Order at 2–3). On July 13, 2026, Appellant filed the Stay Denial Appeal, which included the Motion for Leave. Appellant also filed the Renewed Stay Motion seeking expedited consideration. The Appellant has not posted a supersedeas bond or offered any alternative security.

## II. JURISDICTION

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges under § 158(a)(1), or, "with leave of court, from other interlocutory orders and decrees" under § 158(a)(3). *See* Fed. R. Bankr. P. 8004(a) (setting forth procedure for seeking leave to appeal a bankruptcy court's interlocutory order under 28 U.S.C. § 158(a)(3)). Under the Third Circuit's "flexible, pragmatic approach to finality in the bankruptcy context," an order may be treated as final if it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination." *In re Energy Future Holdings Corp*., 904 F.3d 298, 308-09 (3d Cir. 2018) (citing *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990) and *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1692 (2015)). Factors relevant to the Court's

consideration include "(1) the impact of the matter on the assets of the bankruptcy estate, (2) the preclusive effect of a decision on the merits, and (3) whether the interests of judicial economy will be furthered by an immediate appeal." *Id*. at 308 (cleaned up).

**A. <u>The Confirmation Order</u>**

As the Confirmation Order is a final order, the Court has jurisdiction to hear the Confirmation Order Appeal. *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 570 (D. Del. 2018). Accordingly, the Court may consider the relief requested in Appellant's Renewed Stay Motion, which ultimately seeks a stay of the Confirmation Order pending its appeal.

**B. <u>The Stay Denial Order</u>**

**1. <u>The Stay Denial Order Is Not a Final Order Under § 158(a)(1)</u>**

Even applying the Third Circuit's flexible, pragmatic approach to finality, however, the Stay Denial Order is not final. *See In re Trans World Airlines, Inc.*, 18 F.3d 208, 216 (3d Cir. 1994) (holding order on a stay pending appeal was not a final order). The Stay Denial Order did not resolve the merits of Appellant's underlying appeal, adjudicate rights under the Confirmation Order, or finally dispose of any dispute between Appellant and the Reorganized Debtors; indeed, it is not even the "final word" on the issue of whether a stay is appropriate. Bankruptcy Rule 8007 provides a mechanism for further non-appellate consideration of the Stay Denial Order: when the bankruptcy court denies a stay, the movant may seek relief anew from the district court. Fed. R. Bankr. P. 8007(b)(1). Appellant has done exactly that by filing the Renewed Stay Motion. That the identical relief remains pending before this Court demonstrates that the Bankruptcy Court's Stay Denial Order was not a final resolution, but rather one step in an ongoing procedural sequence that Bankruptcy Rule 8007 establishes.

**2. The Stay Denial Order Does Not Warrant Interlocutory Appeal Under Section 1292(b)**

Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011). Pursuant to section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under section 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

The Stay Denial Appeal satisfies none of section 1292(b)'s requirements. First, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally." *In re Boy Scouts of Am.*, 2021 WL 1174573, * 4 (D. Del. Mar. 29, 2021) (internal citation omitted). The question of law also must be one "that

the reviewing court could decide quickly and cleanly without having to study the record." *In re Team Sys. Int'l*, 2025 WL 1474826, at *10 (quoting *In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2 (S.D.N.Y. Sep. 19, 2007) (internal citations omitted)).

Here, the Bankruptcy Court applied the well-settled four-factor stay analysis set forth in *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)—likelihood of success, irreparable harm, harm to others, and the public interest—and concluded that Appellant's harm was self-inflicted and that he had forfeited his right to appeal by failing to object to confirmation. (Stay Denial Order, at 2–3). A ruling on a stay motion is a fact-intensive, discretionary balancing exercise, not a pure question of law. *See, e.g., In re Team Sys. Int'l, LLC,* 2025 WL 1474826*,* *10 (D. Del. May 22, 2025) ("[T]he Bankruptcy Court's weighing of the relevant factors [of the multi-factor balancing test for bankruptcy stay motions] is necessarily a fact-dependent, discretionary determination which does not present a pure question of law."). Where an appellant "simply disagree[s] with the outcome" rather than identifying a genuine legal error, interlocutory review is unwarranted. *Id.*

Second, there is no substantial ground for difference of opinion. To satisfy this element, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (quoting *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998)). There is no dispute as to the correct standard or that it was applied by the bankruptcy Court. Appellant's disagreement with its application to his particular facts does not create a genuine dispute about what the law requires. *Team Sys. Int'l*, 2025 WL 1474826, at *10 ("This [factor] calls for more than mere disagreement with the ruling of the bankruptcy court"); *see also In re Futter Lumber Corp.*, 473 B.R. 20, 29 (E.D.N.Y. 2012) ("[M]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion.") (internal citations omitted).

Third, immediate appeal would not advance the litigation; in fact, it would multiply it. Appellant has already filed the Renewed Stay Motion in this Court seeking the identical relief. Granting leave to appeal the Stay Denial Order would produce duplicative proceedings with respect to the same question. This duplication is unnecessary because Bankruptcy Rule 8007 already provides the path for this Court to rule. Appellant followed the correct path: the Bankruptcy Court denied the Stay Motion, and Appellant filed the Renewed Stay Motion in this Court.

In sum, Appellant cannot appeal the Stay Denial Order as of right, and Appellant has not demonstrated any basis for interlocutory review. Accordingly, the Motion for Leave will be denied, and the Stay Denial Appeal will be dismissed.

## III. RENEWED STAY MOTION

The Bankruptcy Court denied Appellant's first Stay Motion, finding that Appellant forfeited his right to appeal by failing to object to confirmation of the Plan, failed to show a likelihood of success on the merits, and failed to show irreparable injury because his alleged harm was self-inflicted. (*See* Stay Denial Order at 2-3.) The Renewed Stay Motion does little to remedy these deficiencies.

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc*., 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellant bears the burden of proving that a stay of the Confirmation Order is warranted based on the following criteria: (1) whether the movant has made a strong showing that movant is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). "The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will

suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal." *In re Revel AC,* 802 F.3d at 568 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (internal citations omitted). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted). The Renewed Stay Motion fails to establish either of the first two factors.

**A. Likelihood of Success on the Merits**

With respect to the first factor—a strong showing of the likelihood of success—the *Revel AC* court noted that "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* at 568-69 (internal quotation marks and internal citations omitted).

Although far from clear from his brief, Appellant's first Stay Motion appeared to argue that the Confirmation Order should be stayed because (1) Appellant did not receive timely notice of the Combined Hearing, and (2) if he had, he would have objected to confirmation for the purposes and obtaining a "carve-out" from the Plan's "permanent discharge, release, and injunction provisions," which is (3) necessary "to protect and continue Appellant's active litigation currently pending in the State of New Jersey"—*i.e.*, the Foreclosure Action. (*See* Bankr. D.I. 171 at 1). Absent a stay, Appellant further argued, the appeal may become equitably moot. (*See id*. at 2).

In denying Appellant's first Stay Motion, the Bankruptcy Court held that Appellant was not likely to succeed on the merits of his appeal of the Confirmation Order. "As the Third Circuit has explained, under the party presentation principle, courts typically resolve disputes that are presented to them by the parties." (Stay Denial Order at 2 (internal quotations and footnote omitted)). "The policy supporting waiver and forfeiture is the party presentation principle, which applies in both civil and criminal cases, in the first instance and on appeal." *United States v. Dowdell*, 70 F.4th 134, 140-41 (3d Cir. 2023) (internal quotations omitted). "A party's failure to present an issue to a trial court therefore typically operates as a forfeiture of its right to present the issue on appeal." (Stay Denial Order at 2). The Bankruptcy Court's holding is well supported. *See In re Szostek*, 886 F.2d 1405, 1409-10 (3d Cir. 1989) (creditor's failure to timely object precludes post-confirmation challenge); *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir. 1988) (non-objecting creditor waives right to challenge the plan); *Acute, Inc. v. ECI Pharms., LLC*, 787 F. Supp. 3d 1342, 1357-58 & n.4 (S.D. Fla. 2025) (noting forfeiture occurs automatically when a party fails to timely assert its rights).

As the Bankruptcy Court further held that, "[w]hile the failure to provide notice on a party would of course operate as an exception to this principle, the record here contains evidence of the debtors effecting [service] on defendant." (Stay Denial Order at 2 n.2). "[Appellant]'s motion for a stay asserts that the notice was not received until after the Court entered the confirmation order on May 29, . . . but points to no evidence in support of that naked assertion. In the absence of such evidence, [Appellant] has not met his burden of rebutting the debtors' sworn certification." (*Id.*).

The Renewed Motion contends that Appellant is likely to succeed on the merits based on his sworn declarations, filed in the Bankruptcy Court and with this appeal, that the Hearing Notice arrived late. (*See* Bankr. D.I. 171 at pp. 15-16 of 174; D.I. 4 ¶ 6).

Appellant has not made a strong showing that he is likely to prevail on his due process argument. It is undisputed that Appellees used Appellant's correct address, as Appellant admits that he ultimately received the Hearing Notice. (Bankr. D.I. 101). The Debtors' service was therefore presumptively effective. *In re Lienhard,* 498 B.R. 443, 451 (Bankr. M.D. Pa. 2013) ("Under [the mailbox] rule, proof of mailing raises a rebuttable presumption that the mailed item was received . . . Once established, the party challenging the presumption of receipt must present credible evidence demonstrating that the mailing was not in fact received.") (internal citations omitted).

Appellant's declaration that he received the notices late does not rebut the propriety of notice because, under the mailbox rule, the presumption of receipt may be overcome only by proof that the regular mailing procedures were not followed or were carelessly executed, not by a mere denial of timely receipt. *In re Borders Grp., Inc*., 462 B.R. 48, 53 n.5 (Bankr. S.D.N.Y. 2011) ("The mere denial of receipt does not rebut that presumption" but additionally requires "some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable") (quoting *Meckel v. Continental Res. Co*., 758 F.2d 811, 816 (2d Cir. 1985)); *Cub Cadet Corp., Inc. v. Rosage (In re Rosage),* 189 B.R. 73, 79 (Bankr. W.D. Pa. 1995) ("The presumption is rebuttable only by a showing that in reality the mailing was not accomplished. For instance, it may be rebutted by evidence that the notice was never mailed or that other creditors also did not receive the notice"). Appellant offers little to rebut the presumption of receipt. Appellant argues that he has in the past received notice via email in the Foreclosure Proceeding, seemingly arguing that proper mailing procedures were not followed and that he should have received notice of the Combined Hearing via email (D.I. ¶¶ 8-11). Appellant has further argued that service by "untracked first class mail," with "a lack of safeguards to verify delivery," in "a proceeding compressed to 33 days" fails to meet due process standards. (Bankr. D.I. 171 at 4; Renewed Stay Motion at 2). As the chapter 11 proceedings are entirely unrelated to the Foreclosure

Proceeding, and the Debtors complied with the notice requirements approved in the Procedures Order, these arguments do not support the merits of Appellant's appeal.

Due process requires only notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950); *Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012) (same). Service by first-class mail in accordance with the Procedures Order and the Bankruptcy Rules satisfies this standard. Fed. R. Bankr. P. 2002; Procedures Order ¶ 9. The mere denial of receipt does not rebut the presumption of receipt, so Appellant's claim of delayed receipt, even taken at face value, does not establish a due process violation. *See e.g., In re Freedom Commc'ns Holdings, Inc*., 472 B.R. 257, 262-63 (Bankr. D. Del. 2012). Appellant's additional declarations contain nothing to show "that in reality the mailing was not accomplished." *In re Rosage*, 189 B.R. at 79. Accordingly, Appellant has failed to establish a likelihood of success on the merits of his due process argument.[6]

**B. <u>Irreparable Harm in Absence of a Stay</u>**

Appellant has also failed to establish that he will suffer irreparable harm in the absence of a stay of the Confirmation Order. To do so, Appellant must establish a resulting injury "that cannot be redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989); *In re Revel AC*, 802 F.3d at 572 ("[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless "the potential economic loss is so great as to threaten the existence of the movant's business."). Appellant also must also demonstrate that irreparable injury is likely—not merely possible—in the absence of a

[6] Appellant also contends that counsel to parties in the Foreclosure Action violated his notice or due process rights by failing to disclose the chapter 11 cases. (*See* D.I. 4 ¶¶ 4-5). Appellees are not parties to the Foreclosure Action, and the conduct of counsel for unrelated litigants does not affect Appellant's rights in these chapter 11 cases or in this appeal.

stay, which means the harm is "more apt to occur than not." *Id.* at 569. Even construing his briefs liberally, Appellant has failed to identify any injury in absence of a stay of the Confirmation Order.

Appellant's vague assertion that he "seeks only to preserve Proof of Claim No. 12 and effective appellate review while this appeal proceeds" falls far short of identifying any harm at all, let alone harm that is irreparable. (D.I. 7 at 1). Absent stay of the Confirmation Order, Appellant asserts that he "faces loss of Claim No. 12 and his appellate rights while final claims reconciliation remains pending—an injury not measured in dollars," and thus urges the Court to grant the stay to "preserve Claim No. 12 and prevent final application of the Confirmation Order." Again, these vague assertions never explain how his rights or pending Claims are in any way affected by the Plan Confirmation Order. (D.I. 7 at 3).

Indeed, it is undisputed that Appellants' Claims are preserved under the Plan and remain subject to the ordinary claims-reconciliation process administered by the Plan Administrator. (*See* C.A. No. 26-692 (MN), D.I. 10 at 21–22). Appellant acknowledges that his Claims can and will be resolved within the claims reconciliation process established in Section 8.18(e) of the Plan, which grants the Plan Administrator exclusive authority to reconcile, object to, settle, or allow claims. (*See* C.A. No. 26-692 (MN), D.I. 13 at 3 ("Appellant does not contend that dismissal would extinguish Claim No. 12."); *id.* at 11 ("Appellant seeks no exemption from the Plan and no elevation above similarly situated creditors. If Claim No. 12 is allowed, its distribution treatment remains governed by the Plan."). These concessions underscore the lack of any irreparable harm.

Appellant's further contention that a stay is necessary to "preserve" his rights in the Foreclosure Proceeding is also unsupported. Appellees are not parties to the Foreclosure Action and have no interest in the underlying mortgage. The Plan contains no non-consensual third-party releases that would in theory bind the Appellant, as it is undisputed that he did not opt into the Plan's release provisions. (*See* D.I. 4 ¶ 12; D.I. 5 at 16). Again, Appellant has identified no injury that a

stay of the Confirmation Order would remedy in connection with the Foreclosure Action, let alone one that is irreparable.

Having evaluated Appellant's likelihood of success on the merits and irreparable harm absent a stay and having determined that Appellant has failed to carry his burden as to either element, the Court is satisfied no further analysis is required. *See Revel AC*, 802 F.3d at 571.

## IV. CONCLUSION

For the reasons explained above, the Court will deny the Motion for Leave to appeal the Stay Denial Order and deny the Renewed Stay Motion. An appropriate order follows.